UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
DWIGHT LACY,                                        )
                                                    )
        Plaintiff,                                  )
                                                    )
        v.                                          )
                                                    )        Case No. 22-cv-00558 (APM)
MARIA LAURA ORTEGA and WEICHERT                     )
REALTORS,                                           )
                                                    )
        Defendants.                                 )
_____)

## MEMORANDUM OPINION AND ORDER

### I.

Before the court are Defendants Maria Laura Ortega and Weichert Realtors' respective Motions for Summary Judgment, ECF Nos. 66 [hereinafter Def. Weichert's Mot.] and 67 [hereinafter Def. Ortega's Mot.]. After briefing on the motions concluded, Plaintiff Dwight Lacy moved for Leave to File an Amended Statement of Genuine Issues in Dispute, ECF No. 70 [hereinafter Pl.'s Mot. to Amend], and for Leave to Supplement his Omnibus Opposition to the Motions for Summary Judgment, ECF No. 73 [hereinafter Pl.'s Mot. to Suppl.]. The court grants Plaintiff's motions and will consider his proffered filings as part of the summary judgment record. On the merits, the court grants Defendants' motions as to Plaintiff's Residential Lead-Based Paint Hazard Reduction Act claim but denies them as to all others.

### II.

On November 17, 2020, Plaintiff entered into a contract with Defendant Ortega to purchase a residential property located at 477 Valley Avenue S.E., Washington, D.C. (the "Property") for $433,000. Pl.'s Mot. to Amend, Pl.'s Am. Stmt. of Genuine Issues in Dispute, ECF No. 70-2

[hereinafter Pl.'s Stmt.], at 5, ¶ 19; *id.* at 1, ¶ 1.  Defendant Ortega had herself purchased the Property earlier that year.  *Id.* at 1, ¶ 1.  When she listed the Property for sale, she advertised it as "fully renovated," with the owner having "spent more than $100K in renovation."  *Id.* at 1–2, ¶¶ 2–3.  At the time she listed and sold the Property, Defendant Ortega was affiliated with Defendant Weichert as a Sales Associate.  *Id.* at 15, ¶ 18.

Prior to signing the contract, Plaintiff's realtor asked Defendant Ortega about the specific renovations performed and to provide any permits she had obtained to complete them.  *Id.* at 4, ¶ 16.  Defendant Ortega responded with a list of renovations that included, among other things, duct work for an HVAC system, finishing the unfinished basement, making electrical repairs, and repairing windows and the backyard concrete stairs.  *Id.* at 4–5, ¶¶ 17–18.  The only permit that Defendant Ortega shared with Plaintiff covered air conditioning improvements.[1]  *Id.*; Def. Weichert's Mot., Ex. 11, ECF No. 66-13.  Defendant Ortega also provided Plaintiff with a variety of legally required disclosures, including both state and federal lead-paint disclosures.  Pl.'s Stmt. at 2–3, ¶¶ 6–12.

Just before closing, Defendant Ortega completed an "Owner's Affidavit."  *See* Pl.'s Opp'n to Defs.' Mots. for Summ. J., ECF No. 68 [hereinafter Pl.'s Opp'n], Ex. F, ECF No. 68-9 [hereinafter Owner's Aff.].  In it, she swore that she has "never been aware . . . of any [] problems relating to either the issuance of a building permit or to the failure to obtain one for any improvement to the property," and that "any improvements added to land were authorized by building permit."  *Id.* ¶ 14.  The stated purpose of the affidavit was to "induce the purchase of . . . the premises."  *Id.* ¶ 16.  The parties closed on the Property on December 23, 2020.  Pl.'s Stmt. at 8, ¶ 37.

---

[1] Separate from these renovations, Defendant Ortega later obtained a permit for an "electrical heavy up" that the parties agreed to just before closing.  Pl.'s Stmt. at 6–8, ¶¶ 27, 31–34.

After moving in, Plaintiff began to encounter multiple problems with the home, including the "constant tripping" of electrical breakers, a leaky hot water heater, and water seeping through the windows during rainstorms. Pl.'s Opp'n, Lacy Aff., ECF No. 68-3, ¶ 6. Plaintiff requested an investigation by the D.C. Department of Consumer and Regulatory Affairs (DCRA), which sent an inspector to examine the Property. Pl.'s Opp'n, Ex. G, ECF No. 68-10 [hereinafter DCRA Report], at 7. The inspector concluded that the required permits were not obtained for "demolition of the rear steps and side window," the "[n]ew electrical wiring and outlets in the basement," or installation of the new furnace. *Id.*

Larry Wasson, Plaintiff's expert in building inspection, also inspected the Property. He identified issues ranging from improper furnace installation to faulty electrical wiring, several of which posed safety hazards. Pl.'s Opp'n, Ex. I, ECF No. 68-12 [hereinafter Wasson Report], at 14–17. Plaintiff's structural engineering expert, Anthony Colicchio, estimated that "[t]he cost to remediate the deficiencies, substandard work, hazardous conditions, and non-compliances and violations of the 2017 District of Columbia Residential Code (effective May 29, 2020) is $211,606.00." Pl.'s Opp'n, Ex. K, ECF No. 68-14 [hereinafter Colicchio Report], at 4.

Plaintiff sued Defendants over these defects in March 2022. Compl., ECF No. 1. Following successful motions to dismiss, *see* Order, ECF No. 16, and Plaintiff's subsequent filing of an amended complaint, four claims remain: (1) negligent misrepresentation (Count I); (2) consumer fraud and deceptive trade practices (Count II); (3) violation of the District of Columbia's Consumer Protection Procedures Act (Count III); and (4) violation of the Residential Lead-Based Paint Hazard Reduction Act (Count IV), *see* Order, ECF No. 23; Am. Compl., ECF No. 36. Defendants each filed a counterclaim for contractual indemnity for costs and attorney's fees. Def. Weichert's Answer to Am. Compl. & Counterclaim, ECF No. 25;

Def. Ortega's Counterclaim, ECF No. 27. Defendants now move for summary judgment on Plaintiff's claims and their counterclaims.

### III.

Before reaching the merits, the court addresses Plaintiff's motions to amend and supplement his filings.

*Motion to File Amended Statement of Genuine Issues in Dispute.* Federal Rule of Civil Procedure 56, which governs motions for summary judgment, requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). This court has supplemented Rule 56 with Local Rule 7(h). The rule requires parties to submit "statement[s] of material facts," in which the movant identifies the facts they believe to be undisputed and the nonmovant identifies the facts they believe to be in genuine dispute. *See* LCvR 7(h)(1). The statements must "include reference to the parts of the record relied upon to support" them. *Id.* Plaintiff, however, did not include the necessary record citations in his statement.

After Defendants noted the noncompliance, Plaintiff promptly moved to file an amended statement. Pl.'s Mot. to Amend. Defendants oppose the motion. They maintain that, because Plaintiff failed to include the citations in his original statement, the court should accept Defendants' facts as admitted. Defs.' Omnibus Reply in Supp. of Summ. J., ECF No. 69 [hereinafter Defs.' Reply], at 2. The court declines to do so. The court acknowledges that Plaintiff's initial statement of material facts did not conform to the rules. But the court has discretion in how it handles such deficiency. *See Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988). When allowing correction of an inadequate statement of facts does not result in prejudice, simply accepting the opposing party's facts would elevate form over substance. *See Jackson v.*

*Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996) (providing that district courts may consider prejudice in ruling on a violation of Rule 7(h)'s identical predecessor). Defendants nowhere contend that Plaintiff's failure to include citations inhibited their ability to meaningfully respond. *Cf. Glass v. Lahood*, 786 F. Supp. 2d 189, 199 (D.D.C. 2011). The court thus will not treat Defendants' facts as admitted and grants Plaintiff's motion.

*Motion to Supplement Opposition to Summary Judgment.* After briefing concluded, the D.C. Department of Buildings (DOB) Office of Civil Infractions in October 2024 issued a Notice of Infraction (NOI) to Defendant Ortega for code violations related to the renovations. Pl.'s Mot. to Suppl., Ex. A, ECF No. 73-2 [hereinafter NOI], at 2. Plaintiff seeks to enter the NOI into the record and supplement his opposition memorandum to discuss it. Pl.'s Mot. to Suppl. ¶¶ 9–10.

The court may allow a party to supplement the summary judgment record after briefing has closed "if new relevant facts come to light." *NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, 496 F. Supp. 3d 116, 126 n.2 (D.D.C. 2020). The NOI is plainly relevant to Plaintiff's contention that Defendant Ortega made unpermitted renovations to the Property—it is yet another official recognition of that failure.

Defendants' arguments as to why the NOI should be excluded are unpersuasive. Defendants first question the foundation for the DOB inspector's findings and conclusions, arguing that he merely recites Plaintiff's allegations rather than stating his own observations. Defs.' Opp'n to Pl.'s Mot. to Suppl., ECF No. 74 [hereinafter Defs.' Opp'n], at 1–2. But the NOI includes an attached report from the inspector's examination of the Property. NOI at 23–27. The inspector therefore has the requisite "personal knowledge" for his report to be admissible. *See Stehn v. Cody*, 74 F. Supp. 3d 140, 150–51 (D.D.C. 2014).

Defendants also dispute the significance of the report.  They point out that the report reflects the conclusions of only an individual inspector, rather than an adjudicatory body.  While true, this fact goes to the exhibit's weight, not its admissibility.  Even if it is the inspector's conclusion alone, it is probative as to whether Defendant Ortega made unpermitted renovations to the Property.

Defendants lastly argue that the evidence should be excluded under Federal Rule of Evidence 403.  Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  But the cases Defendants cite—in which the court excluded evidence of paid traffic fines—are inapposite.  *See* Defs.' Opp'n at 2–3 (first citing *Johnson v. Leuthongchak*, 772 A.2d 249, 250 (D.C. 2001); and then citing *Stehn*, 74 F. Supp. 3d at 146).  For one, this case does not involve any payment that could be construed as an admission.  In fact, Defendant Ortega has already denied the allegations.  Defs.' Opp'n, Ex. 1, ECF No. 74-1.  Also, the reasoning of *Leuthongchak* and *Stehn* is unique to traffic fines, for which the small amounts may make paying them "the least intrusive" way to dispose of them, even if a person believes they are innocent.  *Stehn*, 74 F. Supp. 3d at 146 (quoting *Leuthongchak*, 772 A.2d at 251).  Evidence of payment in that context is therefore minimally probative but risks unfair prejudice by implying a belief of guilt the payer may not hold.  *See id.* at 147–48.  By contrast, Defendant Ortega faces $16,243 in potential penalties.  NOI at 3.  It is unlikely that, if she believes she is innocent, she would "pay [the] preset fines for the sake of convenience or expediency" rather than adjudicate the charges.  *Stehn*, 74 F. Supp. at 146 (citation omitted).  The court thus sees both greater probative value in and less of a risk of unfair prejudice from admitting evidence of the alleged infraction than the court did in *Stehn* or *Leuthongchak*.

Seeing no reason to exclude the NOI, the court grants Plaintiff's motion to supplement.

## IV.

The court now proceeds to the merits.  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In evaluating the motion, the court must view the evidence "in the light most favorable to the nonmoving party" and "draw all reasonable inferences" in their favor.  *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  A "genuine" dispute exists if, viewing the record in this light, a reasonable jury could find in favor of the nonmovant.  *Anderson*, 477 U.S. at 248.

### A.

Counts I, II, and III—alleging negligent misrepresentation, consumer fraud and deceptive trade practices, and violation of D.C.'s Consumer Protection Procedures Act, respectively—all relate to the same operative allegation: Defendant Ortega advertised the Property as "fully renovated," yet failed to disclose that the renovations were performed without the proper permits. Indeed, Defendant Ortega arguably made affirmative misrepresentations.  She attested in the Owner's Affidavit that she was "not aware" of "violations of any building permit, zoning law or ordinance" or "any [] problems relating to either the issuance of a building permit or to the failure to obtain one for any improvement to the property."   Owner's Aff. ¶¶ 10, 14; *see also id.* ¶ 14 ("[A]ny improvements added to land were authorized by building permit.").  Plaintiff claims that these misrepresentations were material and that he relied on them in purchasing the Property.  *See id.* at 3 (stating that representations in the Owner's Affidavit were made to "induce the purchase of . . . the premises").

Courts in this District, including this one, have held that a buyer's reliance on similar representations when the seller failed to disclose the lack of proper renovation permits can form

7

the basis for all three claims. *See Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 196–97, 206–07 (D.D.C. 2016); *see also Jefferson v. Collins*, 210 F. Supp. 3d 75, 92–94 (D.D.C. 2016). Defendants do not challenge or attempt to distinguish these decisions. *See generally* Defs.' Reply. Instead, they argue that Plaintiff has not offered enough evidence to sustain these claims in several ways.

*First,* Defendants contend that Plaintiff has not presented any admissible evidence to show that Defendant Ortega—as opposed to someone else—made the allegedly unpermitted renovations. Defendants state that the "only purported evidence" Plaintiff offers is a set of photographs that he claims shows the Property as Defendant Ortega purchased it. Def. Weichert's Mot., Mem. in Supp. of Summ. J., ECF No. 66-2 [hereinafter Def. Weichert's Mem.], at 4. And Defendants argue that the photographs cannot be authenticated because Plaintiff admitted he does not know who took them or when they were taken. *Id.* at 3–5; Def. Ortega's Mot., Mem. of P. & A. in Supp. of Def. Ortega's Mot., ECF No. 67 [hereinafter Def. Ortega's Mem.], at 5. These arguments are without merit.

To authenticate documentary evidence, Federal Rule of Evidence 901(a) "only requires that the proponent . . . make a showing sufficient to permit a reasonable juror to find that the evidence is what its proponent claims." *United States v. Blackwell*, 694 F.2d 1325, 1330 (D.C. Cir. 1982). Testimony of a knowledgeable witness satisfies this standard. *See* Fed. R. Evid. 901(b)(1). Here, Plaintiff provided the Property's Redfin webpage, which shows the photographs included in the March 2020 listing of the Property. Pl.'s Opp'n, Ex. N, ECF No. 68-17, at 6. Plaintiff testified that he contacted the listing agent, who stated that the photographs were an accurate representation of the Property at the time. Def. Weichert's Mot., Ex. 6, ECF No. 66-8 [hereinafter Lacy Dep.], at 82–83.

Defendants rightly point out that, as offered, this evidence inadmissible hearsay.  Plaintiff is offering a "statement" that the listing agent did "not make while testifying at the current trial or hearing" to "prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  But "[a]t summary judgment, a party need not present evidence in a form that is currently admissible." *Klayman v. Jud. Watch, Inc.*, 6 F.4th 1301, 1315 (D.C. Cir. 2021) (citing Fed. R. Civ. P. 56(c)). The party need only "produce evidence capable of being converted into admissible evidence." *Id.* (citation omitted).  Plaintiff stated that he could subpoena the listing agent to testify to the photographs' accuracy at trial.  Pl.'s Opp'n at 26.  This proposal is sufficient to "establish how this hearsay [i]s capable of being converted into admissible evidence," *Klayman*, 6 F.4th at 1316 (internal quotation marks omitted), which would in turn authenticate the photographs.

In any event, the record contains other evidence to establish that Defendant Ortega was responsible for the allegedly unpermitted renovations.  Most notably, she admitted to making substantial renovations before the sale.  In her email to Plaintiff's real estate agent, Defendant Ortega stated that, among other things, she demolished some of the Property, repaired the concrete stairs in the backyard, and worked on the windows.  Pl.'s Stmt. at 4–5, ¶ 17.  Later, a DCRA inspector observed that "[t]here is no building permit for demolition of the rear steps and side window."  DCRA Report at 7.  After a separate inspection, Wasson concluded that a "substantial amount of work was performed on the property between March and December 2020" based on the dates on the drywall, electrical wiring, HVAC equipment, and other renovated features of the house.  Wasson Report at 4.  These renovations correspond to the other code violations for which Plaintiff was cited.  *See* DCRA Report at 7 (noting the lack of permits for both electrical work and the new furnace).  Finally, the supplied air conditioning permit is dated July 7, 2020, a mere six months before the parties closed on the Property.  Def. Weichert's Mot., Ex. 11, ECF No. 66-13.

Viewing the evidence in the light most favorable to Plaintiff, there is a genuine dispute of material fact as to whether Defendant Ortega performed the allegedly unpermitted renovations.

*Second*, Defendants argue that, even if Plaintiff had evidence that Defendant Ortega performed the renovations, there is no evidence that the renovations required a permit. Def. Weichert's Mem. at 7–9, Def. Ortega's Mem. at 7–8. Defendants claim that the renovations were largely exempted from D.C.'s permitting requirements. Def. Weichert's Mem. at 7–8 (citing D.C. Mun. Regs. tit. 12, § 105.2); Def. Ortega's Mem. at 7–8 (same). The DCRA inspection report suggests otherwise. *See* DCRA Report at 7 (listing at least four renovations that were performed without the proper permits). So, too, does the more recent NOI. NOI at 3–4, 23–27. That is enough to create a genuine dispute of material fact on this question.[2]

*Third*, Defendants assert that once Plaintiff received more information on the scope of the renovations from Defendant Ortega, he could not have reasonably relied on the phrase "fully renovated" to mean anything more than that Defendant Ortega completed the listed renovations. Def. Weichert's Mem. at 7; Def. Ortega's Mem. at 6–7. But that argument misses the point. Plaintiff provides evidence suggesting that some of the listed renovations were completed unlawfully and that, at a minimum, Defendants failed to disclose that material information. Drawing all inferences in Plaintiff's favor, Plaintiff has created a genuine dispute that Defendants "induced [him] to purchase the Property" by "represent[ing] the good about the Property—it was

---

[2] Defendant Weichert takes the argument a step further. It contends that even if Defendant Ortega made unlawful renovations, D.C. law does not require her to disclose that to potential buyers. Def. Weichert's Mem. at 7–8. The court does not read D.C. law so narrowly. While the statutory section Defendant cites for support enumerates what sellers must disclose in the "residential real property disclosure statement approved by the Mayor," D.C. Code § 42-1305, that does not give sellers license to conceal material information not required to be included therein, such as the lack of proper permitting for advertised renovations, *see Jacobson*, 168 F. Supp. 3d at 196–97; *Jefferson*, 210 F. Supp. 3d at 92. To the extent Defendant Weichert argues that it is subject to narrower disclosure requirements as a "real estate licensee[] representing sellers," Def. Weichert's Mem. at 8 (citing D.C. Code § 42-1703(a)(2)), for reasons explained later in this opinion, the court will not resolve this argument on summary judgment because there is a genuine dispute of material fact as to Defendants' respective roles under the applicable statute, *see infra* Part V.

'[fully] renovated'—but conceal[ing] the bad—it did not conform to licensing . . . requirements and was shoddily constructed." *Jacobson*, 168 F. Supp. 3d at 196–97. And the ultimate question of "[w]hether the plaintiff can prove the Seller Defendants' actual knowledge of the permitting and licensing omissions is a matter that must be decided by a jury." *Jefferson*, 210 F. Supp. 3d at 92.

*Fourth*, Defendants argue that Defendant Ortega's describing the Property as "fully renovated" was mere puffery. Def. Weichert's Mem. at 9–10; Def. Ortega's Mem. at 8–10. "Puffery is a legal doctrine that posits some statements are of a type that no reasonable consumer would rely upon them, because there is a certain amount of bluster or 'sales talk' that is to be expected when pushing one's wares." *Earth Island Inst. v. Coca-Cola Co.*, 321 A.3d 654, 666 (D.C. 2024). This court did not consider a similar representation—that a home was "newly renovated"—to be puffery in *Jacobson*. *See* 168 F. Supp. 3d at 196 (holding as such and contrasting with phrases that would be considered puffery, like describing renovations as "stunning"). The court sees no reason to conclude differently here.

*Finally*, Defendants argue that Plaintiff has not offered evidence that Defendants' actions caused any injury, which means a jury would have to "speculate" as to damages. Def. Weichert's Mem. at 13; Def. Ortega's Mem. at 12. True, "[d]amages may not be based on mere speculation or guesswork." *Wood v. Day*, 859 F.2d 1490, 1493 (D.C. Cir. 1988). But Wasson's report identified specific substandard work that aligned with the unpermitted renovations for which Plaintiff was cited, such as improper furnace installation. Wasson Report at 14. Additionally, Plaintiff's structural engineering expert concluded that "[t]he cost to remediate the deficiencies, substandard work, hazardous conditions, and non-compliances and violations of the 2017 District

of Columbia Residential Code (effective May 29, 2020) is $211,606.00." Colicchio Report at 4. The experts' reports suffice to create a genuine dispute that Defendants' actions caused damages.

For all these reasons, the court denies Defendants' motions for summary judgment as to Counts I, II, and III of Plaintiff's Amended Complaint.[3]

## B.

Count IV of Plaintiff's Amended Complaint alleges that Defendants failed to comply with the Residential Lead-Based Paint Hazard Reduction Act (the Act). *See* 42 U.S.C. § 4852d. The Act and its implementing regulations require sellers to "disclose to the purchaser or lessee the presence of any known lead-based paint, or any known lead-based paint hazards" at the subject property. *Id.* § 4852d(a)(1)(B); *accord* 40 C.F.R. § 745.100. The parties do not dispute that Defendant Ortega supplied Plaintiff with the required lead-based paint disclosure forms, on which she indicated that she was not aware of any lead-based paint or lead-based paint hazards at the Property. Pl.'s Stmt. at 2–3, ¶¶ 6–12. Plaintiff does not assert that Defendant Ortega made any misrepresentations on the forms. Pl.'s Opp'n at 33–34. Nor has he provided any evidence that there is lead at the property to begin with. *See* Lacy Dep. at 109–10 (stating that he is not aware of any lead abatement activity and that he has not tested the Property for lead). There thus appears to be no genuine dispute that Defendants complied with the statute.

Nevertheless, Plaintiff argues that Defendants are liable for Defendant Ortega's failure to obtain a lead-based paint renovation permit or employ certified lead-safe contractors. Pl.'s Opp'n at 33–34. Plaintiff argues Defendant Ortega was required to do so as the "foreperson of the

---

[3] Defendants also argue that Plaintiff lacks standing, but their arguments are premised on the same purported failures of proof addressed above. *See* Def. Weichert's Mem. at 11–14 (arguing that Plaintiff has alleged only a speculative injury and has failed to allege an injury traceable to Defendants because, for example, Plaintiff cannot show that Defendant Ortega performed the renovations); Def. Ortega's Mem. at 11–12 (same). For the reasons already provided, Plaintiff has standing to bring this suit.

renovation of the Property." *Id.* However, Plaintiff provides no evidence that Defendant Ortega occupied such a role. The statutes and regulations Plaintiff cites impose certification and permitting obligations on those who actually perform the renovations involving lead-based paint. *See* 40 C.F.R. § 745.90(a); D.C. Code § 8-231.10; D.C. Mun. Regs. tit. 20, § 3310. There is nothing in the record to show that Defendant Ortega renovated the property herself or did anything more than just hire contractors. Plaintiff therefore has not created a genuine dispute as to whether the cited requirements apply to Defendant Ortega and, in turn, has failed to show that his claim under the Residential Lead-Based Paint Hazard Reduction Act survives summary judgment. The court accordingly grants Defendants' motions as to Count IV.

## V.

Defendant Weichert separately argues that it is entitled to summary judgment because Defendant Ortega's alleged knowledge of the unlawfulness of the renovations cannot be imputed to it. Def. Weichert's Mem. at 14–15. Throughout the litigation, Plaintiff has maintained that Defendant Ortega's knowledge is imputed to Defendant Weichert because Defendant Ortega was acting as its agent in her role as a Sales Associate. *See* Am. Compl. ¶¶ 4–5, 15–16, 66. Defendant Weichert responds by citing D.C. Code § 42-1703(l)(3), which provides that "[c]lients and licensees shall be deemed to possess actual knowledge and information only. Knowledge or information between or among clients and licensees shall not be imputed." The code defines "licensee" as "real estate brokers, salespersons and property managers." *Id.* § 42-1702(7A). And a "client" is "a person who has entered into a brokerage relationship with a licensee." *Id.* § 42-1703(3A). Defendant Weichert appears to reason that Defendant Ortega is a client "in her capacity as the sole owner/seller," and that Defendant Weichert is a licensee as "the agent retained to market and sell the Property." *See* Defs.' Reply at 8. Under Defendant Weichert's view, because

13

Defendant Ortega's knowledge cannot be imputed and Plaintiff has not shown that Defendant Weichert had actual knowledge of the alleged unlawful renovations, Defendant Weichert is entitled to summary judgment.

The court denies summary judgment to Defendant Weichert on this basis. Whether the statute prohibits imputing Defendant Ortega's knowledge to Defendant Weichert is premised on a genuine dispute of material fact as to Defendants' respective roles in the transaction. While Defendant Weichert argues the configuration described above, Plaintiff sees the situation differently. Plaintiff argues that Defendant Ortega is both the client (as the owner of the Property) and the licensee (as the salesperson). Pl.'s Opp'n at 35. Accordingly, Plaintiff reasons, Defendant Weichert plays neither role, and the statute is silent as to whether Defendant Ortega's knowledge can be imputed to Defendant Weichert as its agent's principal. Given this dispute, the court will not resolve the statutory question on summary judgment.[4]

## VI.

For the foregoing reasons, Plaintiff's Motion for Leave to File an Amended Statement of Genuine Issues in Dispute, ECF No. 70, and Motion for Leave to Supplement Omnibus Opposition to Motions for Summary Judgment, ECF No. 73, are granted. Defendants' Motions for Summary Judgment, ECF Nos. 66 and 67, are granted in part and denied in part.

---

[4] In a single line in its opening brief in support of summary judgment, Defendant Weichert states that charging it with only actual knowledge is "consistent with Ortega being an independent contractor of Weichert." Def. Weichert's Mem. at 15. This argument is substantially underdeveloped. Whether a worker is properly considered an independent contractor is a multi-factor analysis that Defendant Weichert does not attempt to conduct. *See Mills v. Anadolu Agency NA, Inc.*, 105 F.4th 388, 397–98 (D.C. Cir. 2024). An argument mentioned in only "the most skeletal way" in a party's opening brief is forfeited. *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) (internal quotation marks omitted). The court thus declines to consider it.

The parties—including Plaintiff himself—shall appear for a remote status conference on October 1, 2025, at 9:15 AM to discuss Plaintiff's counsel's pending Motion to Withdraw as Counsel, ECF No. 76, and a schedule for further proceedings.

Dated:  September 22, 2025

Amit P. Mehta
United States District Judge